**In re VIKING RANCHES, INC., a Utah corporation, Debtor.**

**Bankruptcy No. SB 88–01810 DN.**

United States Bankruptcy Court, C.D. California.

July 29, 1988.

Stephen P. Feldman, and Mark Miller, Stutman, Treister & Glatt, Los Angeles, Cal., for debtor.

Timothy J. Farris, Staff Atty. for Davis H. VonWittenberg, U.S. Trustee, Los Angeles, Cal.

AMENDED MEMORANDUM OF DECISION RE APPLICATION TO EMPLOY ACCOUNTANTS (ERNST & WHINNEY)

MITCHEL R. GOLDBERG, Bankruptcy Judge.

#### FACTS

The facts are not in dispute. Viking Ranches, Inc., a Utah corporation ("Viking"), is the debtor-in-possession in a voluntary Chapter 11 case which was filed on

March 10, 1988. Viking is engaged in the "operation of a quarter horse and thoroughbred ranch including raising, selling, boarding and racing quarter horses." The schedules show that Viking's total debt is $11,734,181 with 843 creditors listed and inventory (horses at cost) exceeding $6,682,000 as of January 31, 1988.

Viking's substantial and ongoing business activities require the accounting services of a certified public accounting firm. The debtor also requires certain specialized accounting and consulting services from the C.P.A. firm. These services involve:

(1) the interpretation of sales tax law as it applies to the buying and selling of horses, and

(2) maintaining Viking's books, procedures, worksheets and ledgers so that it complies with all sales tax reporting requirements.

Viking wants to employ the certified accounting firm of Ernst & Whinney. Ernst & Whinney ("Ernst") is a major certified accounting firm and has been Viking's independent accountants and auditors since viking was incorporated. In the application for employment, Ernst admits that it is owed an unsecured, pre-petition debt of $21,025. This debt arises solely from prepetition services performed for Viking. It is conceded that Ernst is not an insider, banker or director, nor does the evidence submitted indicate that it holds an interest "adverse" to the debtor's estate in that the debt to Ernst is "de minimus" in comparison to all of the debts of the debtor and does not reflect a substantial portion of Ernst's revenue.

First Interstate Bank of California, which holds a disputed, secured claim for $4.7 million, filed a statement of non-opposition to the application to employ Ernst. The only opposition to the application to employ Ernst has come from the U.S. Trustee.

## ISSUES

The U.S. Trustee opposes the application to employ Ernst on the ground that it is a creditor and therefore is not a "disinterested" person under 11 U.S.C. Section 327(a)

as defined in 11 U.S.C. Section 101(13). There is no dispute between the parties that Ernst is a creditor and, within the strict language of Section 327 and Section 101(13) is not a disinterested person.

The critical issue centers around the interpretation of 11 U.S.C. Section 1107(b) and the degree to which that provision provides an exception to the restrictive terms set forth in Section 327(a).

## ANALYSIS

■ 11 U.S.C. Section 1107(b) provides as follows:

(b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

The U.S. Trustee argues that the majority of case law holds that Section 1107(b) applies as an exception only where the professional is not owed any money pre-petition, and had merely been previously employed by the debtor-in-possession. *In re Pierce*, 809 F.2d 1356 (8th Cir.1987). In that case, the Court of Appeals affirmed the bankruptcy court's denial of an application for employment of counsel in a converted Chapter 11 case. However, the Court found that not only was the attorney not a disinterested party, but that he held an interest materially adverse to the estate. The appellate court did not address the Section 1107(b) exception to Section 327(a) and therefore that decision, because of the unique facts involved and the multiple findings of the court, does not clearly address the issue before this court.

The case of *In re Leisure Dynamics, Inc.*, 33 B.R. 121 (D.Minn.1983) and 32 B.R. 753 (Bkrtcy.D.Minn.1983) does not address itself solely to the narrow exception of Section 1107(b) to Section 327(a) sought in this motion to employ professionals. While the court refers to Section 1107(b), the court also sets forth the fact that Section 1107(b) will not apply to a person who is not disinterested *and* is an insider as de-

fined by the Code. Obviously, situations in which another element for denial of employment under 11 U.S.C. Section 327(a), other than prior employment set forth in Section 1107(b), would preclude a professional from being employed by the debtor-in-possession. Thus, situations in which insider interests or a position that may be materially adverse to that of the estate automatically precludes, under Section 327, the right to employment of that professional.

Debtor cites the case of *In re Best Western Heritage Inn Partnership*, 79 B.R. 736 (Bk.Tenn.1987) as the persuasive authority concerning the exception of Section 1107(b). The court, in that case, set forth a logical and clear analysis of the exception intended by Section 1107(b) to the strict terms of Section 327(a) in *debtor-in-possession cases only*. The court relied on the distinction between debtor-in-possession versus trustee controlled cases, and concludes that Section 1107 distinguishes the rights of debtors-in-possession in such matters.

As set forth in *In re Best Western Heritage Inn Partnership, supra* and *Collier on Bankruptcy* (15th Ed.1985) at Section 1107.03, the purpose for the Section 1107(b) exception in debtor-in-possession cases is to allow the debtor-in-possession to utilize its "management team" which may include professionals who are familiar with the operation of the business and in whom the debtor-in-possession has confidence. Obviously, if these professionals have provided regular service to the debtor, the chances are quite substantial that these professionals will be unsecured creditors of the estate. To allow pre-petition professionals to be employed only if their debt is "paid in full," would necessitate these professionals, when they become aware of severe financial problems, to seek payment in full of the obligation in order that said professionals might be employed by the debtor-in-possession in the future. This would tend to taint the relationship of professionals to debtors-in-possession and may even encourage "adverse" positions due to the possibility that payment to these professionals, prior to bankruptcy for pre-bankruptcy work, would be preferential payments and possi-

bly voidable, if pursued by separate counsel. It does not make sense that Congress would encourage such action in debtor-in-possession cases.

■ I conclude that the critical element of Section 1107(b) is the fact that a person would not be disqualified "solely because of such person's *employment* ... before the commencement of the case." Nothing is said in Section 1107(b) as to whether the term "employment" refers only to employment previously paid or to employment in which the professional may remain a creditor and thus not be disinterested under Section 327(a). If the professional's employment had been fully satisfied prior to the filing of the bankruptcy petition, then the definition of a disinterested person within Section 327(a) would not come into being, unless an argument could be made that the position of this professional, due to the employment, was materially adverse. As previously stated, if a materially adverse position exists, Section 1107(b) does not apply. However, the better reasoning, and practical logic dictates, that the term "employment" under Section 1107(b), must include, in debtor-in-possession cases, any professional who is a creditor solely because of pre-petition employment. In this case, though the professional is owed $21,-000 in fees as a creditor, it is clear from the schedules on file and the declarations submitted that the amount owed by the debtor to Ernst is de minimus in comparison to the size of the estate and the amount owed to Ernst is infinitesimal to the substantial monies it earns as one of the "Big 8" national accounting firms in the course of a given year. Thus, it is clear that the debt involved with this professional is not materially adverse to the estate, nor is there any evidence that Ernst is an insider, officer or director of the debtor-in-possession.

## CONCLUSION

For the reasons set forth above, I have granted the application of the debtor-in-possession to employ Ernst & Whinney as accountants effective July 5, 1988 pursuant

to the exception allowed to debtors-in-possession cases under Section 1107(b).

 The debtor-in-possession also sought to pay said accountants 80% of their monthly billings without prior fee applications. That request is denied pursuant to 11 U.S.C. Section 330(a).

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within Memorandum of Decision shall constitute my findings of fact and conclusions of law.