**In re WATERVLIET PAPER COMPANY, INC., Debtor.**

**Bankruptcy No. SK 88–03257.**

United States Bankruptcy Court, W.D. Michigan.

Dec. 22, 1989.

Harold E. Nelson, Clary, Nantz, Wood, Hoffius, Rankin & Cooper, Grand Rapids, Mich.

Ellen G. Ritteman, Office of the U.S. Trustee, Grand Rapids, Mich.

Timothy J. Curtin, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich., for Creditors' Committee.

John William Butler, Butzel, Keidan, Simon, Myers & Graham, Bloomfield Hills, for Heller Financial Services, Inc.

## MEMORANDUM OPINION REGARDING REQUEST FOR ATTORNEY'S FEES INCURRED IN PURSUING APPEAL OF DISINTERESTEDNESS OF COUNSEL

JO ANN C. STEVENSON,
Bankruptcy Judge.

On February 17, 1989, this court decided that the law firm of Clary, Nantz, Wood, Hoffius, Rankin and Cooper ("Clary, Nantz") which was owed fees for prepetition nonbankruptcy legal work performed on behalf of the Debtor could not pass the "disinterestedness" requirement of 11 U.S.C. § 327(a) and thus was statutorily prohibited from representing the Debtor-in-Possession in its Chapter 11. *In re Watervliet Paper Co.*, 96 B.R. 768 (Bkrtcy.W.D. Mich.1989) Since Clary, Nantz and the Debtor-in-Possession had previously agreed that if this court should rule as it did, the firm would waive its claim for those prepetition legal fees, an order was entered conditioning the firm's retention on that waiver.

That decision was appealed, and on August 28, 1989, the Honorable Benjamin F. Gibson affirmed. *In re Watervliet Paper Co.*, 111 B.R. 131 (W.D.Mich.1989).

Subsequently, Clary, Nantz filed its Second Interim Application for Fees seeking allowance of $57,458.48 in fees and $4,556.23 in expenses. The U.S. Trustee timely objected to the allowance of fees attributable to approximately 93.05 hours for work which the firm performed in pursuing the appeal. The U.S. Trustee did not contend that the approximately $10,000.00 sought for that work was neither reasonable nor actual, but rather that the appeal work did not benefit the Debtor in any way.

The matter was taken under advisement to permit the parties to file letter briefs. Counsel for the Creditors' Committee also submitted its letter brief supporting the firm's position.

The question before the court is easily framed: Did the appeal of the February 17, 1989, Watervliet opinion benefit the estate so as to justify the Debtor's payment of the attorney fees incurred in pursuing that appeal?

Both the firm and the Creditors' Committee argue vigorously that the Debtor has benefitted from this work. They explain that because of the firm's experience and familiarity with the Debtor's financial condition, and the economic problems which likely would have resulted if in the early stages of this Chapter 11, the Debtor was required to both find and bring substitute counsel up-to-speed, the Debtor benefited from the firm's agreement to remain as counsel as long as it could continue to pursue its right to both represent the Debtor and retain its prepetition claim.

The firm also argues that there was a "deal" understood by the Debtor, the Creditors' Committee and the primary secured creditor that the Debtor would resist the Trustee's efforts to require the firm to waive its prepetition claim.

This court has reviewed the Debtor's Application to appoint Clary, Nantz and the December 30, 1988 affidavit filed in support thereof and finds that the only relevant language regarding waiver of the prepetition claim is contained in the affidavit's last two sentences.

> The Debtor has total unsecured debts of approximately $9,000,000, therefore, the debt owed to said firm is *de minimus* and does not create a prohibited adverse interest. Said firm of attorneys will waive its unsecured claim in this case if, and only if, this Court requires such a waiver in order for said firm to represent the Debtor in this case.

That language did not suggest then nor does it now that the Debtor and the firm entered into any agreement whereby the Debtor would bear the cost of an appeal of an adverse order regarding the firm's retention. In fact, the "this Court" language would suggest otherwise. In any event, based on the representations of counsel the court will accept that such an agreement was made.

Regardless of the existence of any agreement or deal, however, the real issue is whether those fees represent work which benefitted the estate.

It bears repeating that as a matter of law attorneys may recover fees from the estate only if their labors actually benefitted the estate. *In re Ryan,* 82 B.R. 929 (N.D.Ill.1987) (debtor's estate not benefitted where attorney represented debtor in nondischargeability suit); *In re Moore,* 57 B.R. 270, 271 (Bkrtcy.W.D.Okla.1986) (no benefit where work performed was for non-bankruptcy matters such as criminal charges and probate matters); *Matter of Zweig,* 35 B.R. 37, 38 (Bkrtcy.N.D.Ga.1983) (no benefit where services were rendered to benefit the debtor personally); *In re Rosen,* 25 B.R. 81 (Bkrtcy.D.S.C.1982) (no benefit where services were rendered to benefit the debtor personally); and *In re Sandra Cotton, Inc.,* 91 B.R. 657 (W.D.N.Y.1988) (no benefit where the services rendered actually impeded the administration of the estate). Not all services rendered by professionals benefit the estate.

No one contests that the firm has done and no doubt will continue to do an exemplary job. In *Watervliet, supra,* however, we rejected the argument that despite its prepetition claim the firm should still be permitted to represent the Debtor without waiving its claim because of its special expertise and knowledge crucial to guiding the Debtor through the Chapter 11 process. This argument is just as unpersuasive when raised again as the explanation of the "benefit conferred upon the estate" by pursuing the appeal.

The only entity which stood to benefit from the appeal was Clary, Nantz. If successful, it would have been allowed to retain its prepetition unsecured claim of some $28,000.00 while continuing to represent the Debtor. If the firm had then sought payment of fees attributable to the appeal, we would be faced with the anomalous situation of the Debtor asking to pay for the privilege of paying all or some portion of a $28,000.00 prepetition unsecured claim which this court had previously ruled it was not required to do. While it is reasonably certain that a successful appeal would at some time or another likely have benefitted all the professional firms in this district which regularly practice bankruptcy, the question of whether the Debtor benefitted and thus should bear the cost of the appeal would still have been an issue.

Having unsuccessfully pursued the appeal, the Debtor's estate is still not liable for the unsecured prepetition claim but the firm argues that the Debtor's estate should still pay the bill. This court discerns an obvious tension between the firm's interest in having its prepetition unsecured claim allowed and the Debtor paying the fees incurred in accomplishing this goal and the Debtor's interest in reducing its pre- and postpetition liability.

The Committee's argument that the Debtor had a right to seek a final, non-appealable Order is undisputed. That right, however, does not require the estate to bear the cost when it has not reaped a concomitant benefit.

Finally, no one should be heard to complain that the U.S. Trustee initially raised

this objection. Congress has specifically directed that the U.S. Trustee monitor fees. *See* 28 U.S.C. § 586(a)(3). It is not the right to appeal to which the U.S. Trustee objects, but rather to the Debtor's estate bearing the cost.

On December 14, 1989 an order was signed Partially Approving Second Application of Clary, Nantz, Wood, Hoffius, Rankin & Cooper for Compensation as Attorneys for the Debtor-in-Possession. Pursuant to that Order fees of $42,902.25 and expenses of $4,556.23 were allowed. The additional $10,000.00 in fees sought in that Second Application are hereby disallowed and an order in conformity with this ruling will be entered herewith.